IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| Leanna J. Hellyer, | : | |
| Plaintiff | : | Civil Action 2:13-cv-00802 |
| v. | : | Judge Watson |
| Carolyn Colvin, | : | Magistrate Judge Abel |
| Acting Commissioner of Social Security, | | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Leanna J. Hellyer brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Social Security disability and Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**<u>Summary of Issues.</u>**

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred by adopting the residual functional capacity assessment of the prior administrative law judge pursuant to AR 98-4(6);
- The administrative law judge erred by failing to consider Listing 4.11B relating to chronic venous insufficiency;
- The administrative law judge erred in evaluating plaintiff's credibility; and,
- The administrative law judge erred in failing to obtain testimony from a medical expert.

**Procedural History.**  In January 2001, plaintiff filed for disability insurance benefits alleging disability as of August 26, 2000. The state agency denied her application initially and upon reconsideration. Plaintiff timely requested a hearing. In October 2001, an administrative law judge held a hearing and issued a decision finding that plaintiff was not disabled. Plaintiff did not appeal that decision.

Plaintiff Leanna J. Hellyer filed her application for disability insurance benefits on September 15, 2010, alleging that she became disabled on June 15, 2005, at age 39, by depression, diabetes, neuropathy and severe pain in her legs.  (R. 259, 296.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On March 27, 2012, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 66.)  A vocational expert also testified.  On May 18, 2012, the administrative law judge issued a decision finding that Hellyer was not disabled within the meaning of the Act.  (R. 60.)  On June 18, 2013, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1-4.)

**Age, Education, and Work Experience.**  Leanna J. Hellyer was born November 14, 1965.   (R. 259.) She has a high school education and received training from the Bureau of Vocational Rehabilitation.  (R. 297.)  She has worked as an assistant cook, cashier, newspaper delivery person, survey interviewer, industrial packer, and salesperson. She last worked June 2009.  (R. 297.)

2

**Plaintiff's Testimony.** Plaintiff testified that she lives with her boyfriend. She has a driver's license, but she does not have a car. Her mother helps her get around. She does not believe that she could drive if she had a car given the neuropathy in her feet, which resulted in a loss of feeling. Her father drove her to the hearing.

Plaintiff completed high school. She received a little bit of income, a medical card, and food stamps from the Ohio Department of Job and Family Services. In 2006 and 2007, plaintiff worked part time as an assistant cook at the Faith Memorial Church daycare center. She left that job because of her diabetes and emotional stability.

Hellyer said she had a sore on her leg from a spider bite and could not stand anymore. The bite caused her severe pain, and it would not heal. The wound seeped continually, and she experienced a burning pain. She was treated at the emergency room. She was given a tetanus shot and had the wound wrapped. In 2010, she was treated at a wound clinic. It has never completely cleared up.

Plaintiff also experienced numbness in her hands and feet. She has no feeling in her feet whatsoever. The numbness in her feet became progressively worse since she stopped worked. The numbness caused her to have difficulty walking and standing. Her varicose veins caused her lot of pain. She had severe swelling in her legs and bruising. She was prescribed Cymbalta, Neurontin, and Lidocaine patches for pain, but they did not provide her relief. She has been having ablations on her legs to increase blood flow. It was necessary for her to elevate her legs to get the blood flow back up to her heart. As a result, she could only stand for 15-20 minutes. She elevated her legs

3

during the day every 15-20 minutes. Over the course of a day, she elevated her legs for approximately 6 hours. This has become increasingly worse. Two to three years ago, she only elevated her legs for four hours a day.

She continued to have weeping from her leg. Her leg had discoloration. The wound has been debrided twice.

Hellyer began taking insulin in June 2011. She checked her blood sugar regularly, and her levels ran from 110 to 200. In the fall of 2011, she was prescribed compression stockings. She was first instructed to use them in 2002. She generally wore them everyday.

The numbness in her fingers have caused her to burn her fingers. She had difficulty picking up a glass, a pitcher or a half gallon of milk. Her problems with her hands started in 2010. She could not distinguish between water temperatures. She cannot button or zip clothes. She can barely make a fist, although she can turn a doorknob.

Plaintiff also testified that she had pain in her shoulders and weakness in her arms. She hurt all over. Her doctor believed that she may have fibromyalgia.

Hellyer had difficulty sleeping because she had trouble breathing and had panic attacks. She was told she had sleep apnea, but she could not use a CPAP machine because she felt claustrophobic. She had been using oxygen for the past week because she could not use a CPAP machine, but she did not feel as though it was helping. Her energy level was poor.

4

Hellyer had crying spells, anxiety, memory problems, and mood swings for the past two years. She was prescribed Abilify. She had gone to mental health centers in the past. She had trouble breathing during the day and felt as though an elephant was sitting on her chest. Side effects from her medications included sleepiness and memory problems.

Hellyer said she had severe pain in her spine. Sitting for a long time caused her pain. She could only sit for 10-15 minutes. She could walk about 200 yards before requiring a rest.

During the day, Hellyer did the dishes and what housework she could perform. She went grocery shopping with her mom once or twice a month. She watched about an hour of television. She used to walk her boyfriend's dogs, but she could no longer do so. She had no hobbies. (R. 76-102.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

David Lynch, D.O. On June 7, 2005, Dr. Lynch noted that plaintiff had a red spot on her leg down to her ankle that was seeping. On January 8, 2008, Dr. Lynch said that the wound on plaintiff's leg was healing well. She had full strength in her legs. He treated plaintiff for neuropathy, hypertension, type 2 diabetes, and venous insufficiency. (R. 493.) Dr. Lynch noted that plaintiff's depression was controlled with

5

medications. (R. 494.) He believed that her condition was sufficiently under control for her to operate a motor vehicle. (R. 495.)

<u>Ebunulunda Wion, O.D.</u> On October 1, 2010, Dr. Wion, plaintiff's primary care physician, opined that plaintiff was "unemployable." Dr. Wion treated plaintiff for diabetes, peripheral neuropathy, peripheral vascular disease, depression, and abdominal pain. Dr. Wion concluded that plaintiff could stand and/or walk for one hour in an eight hour work day and sit for one hour in an eight hour workday. Hellyer was moderately limited in her ability to perform repetitive foot movements. She exhibited an antalgic gain and leaned to the left. (R. 438-39.)

In February 2011, plaintiff complained of right leg and calf pain. She had reddish discoloration of the bilateral toes, and swelling was worse on the left. Her fasting blood sugar was 264, and plaintiff was placed on insulin. (R. 574.)

On January 11, 2012 Dr. Wion completed a physical capacities evaluation. (R. 756.) Dr. Wion opined that plaintiff could only walk or stand for 3 hours in an eight hour day. She could sit for six hours in an eight hour day. She could lift up to five pounds occasionally. With respect to the occasional use of her hands, Dr. Wion confusingly indicated that plaintiff both could and could not perform simple grasping, pushing and pulling and fine manipulation. Dr. Wion opined that plaintiff could not use her feet for repetitive movements in operating foot controls. Plaintiff could occasionally bend, but she could never squat, crawl, or climb. She could not reach above shoulder level. Dr. Wion did not express any opinion on the evaluation form concerning

6

whether plaintiff could sustain full-time work activity. (R. 757.) Dr. Wion also completed an upper extremity physical capacity evaluation. (R. 758-59.) She could occasionally perform gross and fine manipulation. She could never reach in all directions. She could occasionally feel.

Fairfield Medical Center Wound Clinic. On May 3, 2007, plaintiff was treated at the Wound Clinic. The ulcer measured 2-3 cm by 2.0 cm. On May 29, 2007, the ulcer measured 2.6 cm by 2.0 cm. The base was beefy red, moist and hypergranulated. (R. 499.) On June 11, 2007, there was reddish brown drainage on the dressing. (R. 503.)

On June 15, 2011, plaintiff reported bilateral leg inflammation and pain. The skin on her right lower leg was slightly pink with petechia. She had edema, varicose veins, skin discoloration, decreased hair growth, and decreased sensation below the ankle. (R. 637.)

Plaintiff was treated at the wound clinic from December 2011 through May 2012. (R. 804-839.) On May 17, 2012, plaintiff returned for treatment of an open wound on her left lower leg. Plaintiff reported excessive warmth, increased drainage and increased pain. (R. 804-05.)

David Lynch, D.O. David Lynch, D.O. submitted records from June 2004 onward. (R. 492.) On June 7, 2005, plaintiff had a non-healing wound on her left lower leg, varicose veins, superficial cellulitis, and excoriations of the left medial leg. She was prescribed compression stockings. (R. 507.) On July 26, 2006, plaintiff had lower extremity pain and numbness with sclerosis and varicosities and edema in her lower

7

extremities. (R. 508.)  On August 27, 2004, plaintiff had bilateral lower extremity edema. (R. 505.)

A February 8, 2011 bilateral venous duplex ultrasound found no evidence of deep vein thrombosis (R. 609).  On February 8, 2011, plaintiff had multiple dry patches on her bilateral lower extremities with purple discoloration on multiple bilateral toes and lower extremity swelling. (R. 574.) A February 11, 2011 lower arterial study found no edema and no evidence of significant peripheral arterial disease of the bilateral lower extremities (R. 603.) On April 19, 2011, treatment notes reflect that plaintiff had bilateral lower extremity varicose veins, increased sensitivity in her calves, and decreased sensation in her feet. (R. 565.) An April 29, 2011 lower extremity arterial doppler study found no evidence of significant peripheral arterial disease of bilateral lower extremities (R. 688-91.) A May 31, 2011 right lower extremity doppler ultrasound was negative for deep vein thrombosis as to the right lower extremity and no focal abnormalities were seen (R. 644-45).

CardioVascular Specialists. On July 21, 2011, plaintiff was seen by a cardiologist who noted the presence of lower extremity pain, a non-healing sore, and findings of venous insufficiency including ulceration. (R. 678.)

A July 8, 2011 lower extremity venous duplex report indicated findings of significant reflux in the superficial veins of the right and left lower extremities. The exam was technically difficult because of plaintiff's edema. (R. 687.)

A December 22, 2011 treatment note indicated that plaintiff had multiple excoriations on her legs and 2+ edema bilaterally. (R. 764-67.)

A March 1, 2012 lower extremity venous duplex report indicated that the greater saphenous vein was non-compressible in the left thigh consistent with superficial venous thrombosis. There was continuous reflex while standing within the perforators connecting the greater saphenous vein to the posterior tibial veins about the left leg ulcer. (R. 788.)

Ron P. Linehan, M.D. On July 25, 2011, Dr. Lineham, a pain management specialist, began treating plaintiff for low back and leg pain. (R. 754-55.) Dr. Lineham diagnosed lumbar disc disease with nerve root impingement and diabetic neuropathy. Dr. Lineham administered a series of lumbar epidural injections. (R. 751-55). A September 14, 2011 x-ray of plaintiff's lumbar spine confirmed the presence of mild spondylosis at multiple levels, mild to moderate degenerative disc disease, and spondylosis and facet arthropathy at L5-S1. (R. 742.)

On January 4, 2012, Dr. Linehan noted that plaintiff failed to improve with treatment. Her findings were consistent with sacrollitis and/or facet arthropathy. (R. 787.)

Christian R. Tencza, M.D. On December 22, 2011, Dr. Tencza examined plaintiff for evaluation of pulmonary hypertension  following a referral by Dr. Wion. Plaintiff reported having trouble doing lots of things. She could not stand for long because of diabetes and sores on her legs. Walking and activities of daily made her short of breath.

9

Plaintiff reported that she may have fibromyalgia. She was positive for Raynaud's phenomenon.  Dr. Tencza also diagnosed diastolic heart dysfunction and congestive heart failure. (R. 764-69.)

A January 6, 2012 pulmonary function study revealed a severe obstructive defect with a moderately reduced diffusing capacity. (R. 777-78.)

Rajib Saha, D.O. On January 4, 2012, plaintiff was diagnosed with obstructive sleep apnea. (R. 782-83.) On January 25, 2012, Dr. Saha, a physician with Columbus Sleep Consultants, evaluated plaintiff for complaints of poor sleep. Dr. Saha diagnosed obstructive sleep apnea and restless leg syndrome. During the evaluation, plaintiff left against medical advice during the second night of observation.  (R. 779-81.)

On January 6, 2012, plaintiff began receiving treatment at the Endocrinology, Diabetes and Metabolism Clinic at The Ohio State University Medical Center. (R. 796-803.)

**Psychological Impairments.**

William H. Vasilakis Psy.D. On September 27, 2010, Dr. Vasilakis, a psychologist, completed a medical functional capacity assessment for the Ohio Department of Jobs and Family Services. Dr. Vasilakis diagnosed major depressive disorder, recurrent; anxiety disorder, not otherwise specified with panic; and a pain disorder. Dr. Vasilakis opined that plaintiff was markedly limited in her abilities to understand and remember very short and simple instructions; carry out very short and simple instructions; to maintain attention and concentration for extended periods; to work in coordination

10

with or proximity to others without being distracted by them; to make simple work-related decisions; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Vasilakis also opined that plaintiff was markedly limited in her abilities to accept instructions and respond appropriately to criticism from supervisors and to travel in unfamiliar places or use public transportation. (R. 485-86.)

On mental status examination, plaintiff was oriented in three spheres. Her speech was slow and her tone was moderate. She reported that her leg felt like she had been stabbed with hot pokers. She reported feeling severely depressed. She reported symptoms of anhedonia, withdrawal, tearfulness at times, and trouble sleeping. She stated she was not able to maintain employment because of her pain. She had no past psychiatric history, although she received counseling when she was 19 years old for behavioral issues. She had panic attacks in the past and reported that her depression waxed and waned. She had considered suicide in the past but has not made any attempts. There was no evidence of psychosis. (R. 486.)

Marc E. Miller, Ph.D. On December 21, 2010, Dr. Miller, a psychologist, performed a consultative examination of plaintiff at the request of the Bureau of Disability Determination. Plaintiff reported difficulty with chronic anxiety, depression, temper outbursts, withdrawal and moodiness. She was treated in 2004 and 2006 for depression, but she no longer was in treatment.

11

On mental status examination, plaintiff was oriented in all four spheres. Her concentration was fair. She could not spell "world" in reverse. She could follow two-step directions. Hellyer rated her depression as a 10 on a ten-point scale and her anxiety as an 8. Dr. Miller rated her depression as a 7 and her anxiety between 6 and 7. Her energy level was fair to poor. She was tearful at times during the evaluation. She complained of anxiety attacks around crowds, people or when under stress. Hellyer noted difficulty with agitation, impatience, and irritability over the past two years.

Hellyer described her daily activities as going to sleep at 6 p.m. and rising at 3 a.m. She ate two meals per day. She had her driver's license, but she stayed at home. She had no hobbies. She did not watch television. Her boyfriend performed the cooking, laundry, and cleaning. Her mother took her grocery shopping. Her boyfriend took care of the money management.

Dr. Miller concluded that plaintiff had no impairment in her abilities to understand, remember and carry out one and two-step job instructions. Hellyer's ability to interact with co-workers, supervises and the public was mildly impaired. Her ability to maintain attention and concentration was moderately impaired. Her ability to deal with stress and pressure in a work setting was moderately impaired. Her persistence in task completion was moderately impaired. Dr. Miller assigned Hellyer a Global Assessment of Functioning ("GAF") score of 60. Dr. Miller diagnosed pain disorder with psychological factors and medical condition; dysthymic disorder, moderate; and generalized anxiety disorder, moderate to severe. (R. 488-91.)

12

**<u>Administrative Law Judge's Findings</u>.**

1.  The claimant met the special earnings requirement of the Act on the alleged onset date and continues to meet those requirements through the date of this decision.

2.  The claimant engaged in substantial gainful activity from June 2006 to July 2007 (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3.  However, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity.

4.  The claimant has the following severe impairments: chronic venous insufficiency; diabetes mellitus; diabetic neuropathy; pain disorder with general medical condition; obstructive sleep apnea with restless leg syndrome; lower extremity edema; depression; and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c).

5.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404. 1526, 416.920(d), 416.925 and 416.926).

6.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, she can lift 15 pounds frequently and 25 pounds occasionally. She can sit for two hours at a time for a total of six hours in a workday. She can stand for 30 minutes at a time for a total of two hours in a workday and she can walk for one hour at a time for a total of four hours in a workday. She must have the option of alternating between a sitting and a standing position every two hours and needs the opportunity to elevate her legs for 30 minutes at midday. She can crouch and squat less than occasionally. She can climb stairs occasionally. She cannot work around unprotected heights or moving or hazardous machinery. Mentally, the claimant can understand and perform simple repetitive tasks that do not require more than occasional adaptions to changes in the work

environment. She has the ability to maintain attention and
concentration for two-hour segments.

7.      The claimant cannot perform her past relevant work (20 CFR
         404.1565 and 416.965).

8.      The claimant was born on November 14, 1965 and was 39 years old,
         which is defined as  younger individual age 18-44, on the alleged
         disability onset date (20 CFR 404.1563 and 416.963).

9.      The claimant has at least a high school education and can
         communicate in English (20 CFR 404.1564 and 416.964).

10.     Transferability of job skills is not material to the determination of
         disability because using the Medical-Vocational Rules as a
         framework supports a finding that the claimant is "not disabled,"
         whether or not the claimant has transferable job skills (See SSR 82-
         41 and CFR Part 404, Subpart P, Appendix 2).

11.     Considering the claimant's age, education, work experience, and
         residual functional capacity, there are jobs that exist in significant
         numbers in the national economy that the claimant can perform (20
         CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12.     The claimant has not been under a disability, as defined in the
         Social Security Act from June 15, 2005, through the date of this
         decision (20 CFR 404.150(g) and 416.920(g)).

(R. 46-60.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings

of the Commissioner as to any fact, if supported by substantial evidence, shall be

conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389,

401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is

"'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

14

1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred by adopting the residual functional capacity assessment of the prior administrative law judge pursuant to AR 98-4(6). Plaintiff argues that although this claim involves a prior application and decision, the administrative law judge's reliance on AR 98-4(6) to adopt the prior administrative law judge's residual functioning capacity evaluation was improper because the record contains new and material evidence documenting a worsening of her chronic venous insufficiency and establishing the presence of additional severe impairments including chronic obstructive pulmonary disorder, degenerative disc disorder, diabetic neuropathy, and obstructive sleep apnea which impose additional and significant limitation of function. Plaintiff experienced non-healing ulcerations, severe lower extremity

15

swelling, loss of sensation in her legs and feet, skin discoloration with cellulitis, and chronic lower extremity swelling.

- The administrative law judge erred by failing to consider Listing 4.11B relating to chronic venous insufficiency. To meet Listing 4.11B, a claimant must show a diagnosis of chronic venous insufficiency of a lower extremity with incompetency or the obstruction of the deep venous system, with superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least three months of prescribed treatment. Plaintiff argues that the record documents the presence of varicose veins, stasis dermatitis and both recurrent and persistent ulcerations affecting her lower extremities. The record also documents a persistent nonhealing wound on plaintiff's lower extremities, edema, numbness and skin discoloration. Plaintiff reported persistent swelling, severe pain in her legs, and the need to elevate them frequently throughout the day. There is no indication in the decision showing that the administrative law judge considered Listing 4.11B.

- The administrative law judge erred in evaluating plaintiff's credibility. The administrative law judge concluded that the evidence failed to document signs associated with chronic, severe pain including muscle atrophy, spasm, rigidity or tremor. The administrative law judge indicated that allowing plaintiff to elevate her legs for thirty minutes at midday was sufficient to address her

lower extremity swelling. In reaching this conclusion, the administrative law judge adopted the conclusion of the previous administrative law judge. Plaintiff maintains that this was improper because at the time of the prior assessment, plaintiff's lower extremity symptoms were healed and under good control. Plaintiff argues that the current record demonstrates a significant worsening of her chronic venous insufficiency and lower extremity condition. Even if elevation for thirty minutes at lunchtime was adequate in 2003, it was not adequate in March 2012. Plaintiff argues that her complaints of swelling, pain, ulcerations, and the need to frequently elevate her legs are the direct result of medically determinable impairments and are well-supported by the objective and clinical evidence of record.

- The administrative law judge erred in failing to obtain testimony from a medical expert. Plaintiff argues that the administrative law judge abused his discretion in failing to obtain medical expert testimony. Medical expert testimony may be warranted when determining whether a claimant's impairment meets a listed impairment; determining the degree of severity of a claimant' physical or mental impairment; clarifying conflicting or confusing medical evidence; explaining the significance of clinical or laboratory findings in the records; determining the functional limitations established by the evidence; or establishing the onset of disability. Plaintiff contends that the

17

administrative law judge was not qualified to evaluate these issues without

input from a medical expert.

**Analysis.**  Prior ALJ Decision. The administrative law judge stated:

> The prior Administrative Law Judge found the claimant had the following severe impairments: chronic venous insufficiency; diabetes mellitus without end organ complication; and her depression.
>
> New and additional evidence submitted with the new application does not show any increase in severity of symptoms and or functional limitations or the occurrence of any additional new severe physical impairments. However, new and additional evidence submitted with the new application does evidence the additional presence of a generalized anxiety disorder, a pain disorder with generalized medical condition; obstructive sleep apnea with restless leg syndrome; diabetic neuropathy; and an increase in severity in the limits on the ability to perform daily living activities, interact socially and maintain concentration, persistence, or pace.
>
> As the new and additional evidence submitted by the claimant fails to establish the claimant is more limited than originally determined *vis-a-vis* the claimant's severe physical impairments and the limitations they impose *res judicata* attaches as to those impairments and so, therefore, I am bound by the May 8, 2003, findings of the previous Administrative Law Judge as to the claimant's severe physical impairments and the limitations they impose. As such, those findings remain in full force and effect.
>
> Because new and additional evidence submitted with the new applications shows the claimant has been assessed with additional mental impairments and the now combined effects of all the claimant's mental impairments limits her more than originally determined by the previous Administrative Law Judge, a basis for a different finding as to the severity of the claimant's mental impairments and residual functional capacity is established.

(R. 44.) Plaintiff argues that the record contains new and material evidence

documenting a worsening of her chronic venous insufficiency and establishing the

presence of additional severe impairments including chronic obstructive pulmonary

disorder, degenerative disc disorder, diabetic neuropathy, and obstructive sleep apnea

which impose additional and significant limitation of function. Plaintiff's symptoms include non-healing ulcerations, swelling in her lower extremities, diminished sensation in her legs and feet, skin discoloration and cellulitis. The administrative law judge acknowledged that the medical evidence demonstrated that the claimant has insulin dependent diabetes mellitus, chronic venous insufficiency, diabetic neuropathy, pain disorder with general medical condition, obstructive sleep apnea with restless leg syndrome, lower extremity edema, depression and a generalized anxiety disorder. (R. 54.)

The residual functional capacity adopted by the administrative law judge is supported by substantial evidence in the record. The administrative law judge noted that the record did not contain evidence of abnormal clinical or laboratory findings sufficient to document a further degree of loss than that necessary to perform sedentary work with limitations on the amount of time she could remain on her feet without needing to change position.

Listing 4.11B. Listing 4.11 states:

Chronic venous insufficiency of a lower extremity with incompetency or obstruction of the deep venous system and one of the following:
. . .
B. Superficial varicosities, stasis dermatitis, and either recurrent ulceration or persistent ulceration that has not healed following at least 3 months of prescribed treatment.

20 CFR Pt. 404, Subpt. P, App. 1.

The administrative law judge stated that the medical evidence failed to demonstrate that Hellyer's impairments met or equaled the criteria for any of listed impairments. The administrative law judge specifically considered Listings 3.10, 3.09, 11.14, and 12.02, 12.04, 12.06, 1207, or 12.08. The administrate law judge did not identify Listing 4.11 as a potential listing. The administrative law judge identified chronic venous insufficiency as one of plaintiff's severe impairments, but he noted that Dr. Lynch reported that plaintiff's neuropathy with leg pain was controlled with medication. Dr. Lynch indicated that Hellyer had full strength in her legs, and she had no driving limitations. (R. 493-95.) A February 8, 2011 bilateral venous duplex ultrasound found no evidence of deep vein thrombosis (R. 609). A February 11, 2011 lower arterial study found no edema and no evidence of significant peripheral arterial disease of the bilateral lower extremities (R. 603.) An April 29, 2011 lower extremity arterial doppler study found no evidence of significant peripheral arterial disease of bilateral lower extremities (R. 688-91.) A May 31, 2011 right lower extremity doppler ultrasound was negative for deep vein thrombosis as to the right lower extremity and no focal abnormalities were seen (R. 644-45), and a July 8, 2011 lower extremity venous duplex study found no evidence of deep vein thrombosis in either lower extremities (R. 687).

Plaintiff does not point to any evidence in the record documenting chronic venous insufficiency of a lower extremity "with incompetency or obstruction of the

deep venous system," and the administrative law judge did not err by failing to explicitly discuss Listing 4.11B.

    <u>Credibility Determination</u>. Pain is an elusive phenomena.  Ultimately, no one can say with absolute certainty whether another person's subjectively disabling pain and other symptoms preclude all substantial gainful employment.  The Social Security Act requires that the claimant establish that he is disabled.  Under the Act, a "disability" is defined as "inability to engage in any substantial gainful activity *by reason of any medically determinable or mental impairment* which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §423(d)(1)(A) (emphasis added).

    Under the provisions of 42 U.S.C. §423(d)(5)(A), subjective symptoms alone cannot prove disability. There must be objective medical evidence of an impairment that could reasonably be expected to produce disabling  pain or other symptoms :

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.  Objective medical evidence of pain or other symptoms established by medically acceptable clinical or other laboratory techniques (for

example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

The Commissioner's regulations provide a framework for evaluating a claimant's

symptoms consistent with the commands of the statute:

(a) *General*.  In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings as defined in §404.1528(b) and (c).  By other evidence, we mean the kinds of evidence described in §§404.1512(b)(2) through (6) and 404.1513(b)(1), (4), and (5) and (e).  These include statements or reports from you, your treating or examining physician or psychologist, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work.  We will consider all of your statements about your symptoms, such as pain, and any description you, your physician, your psychologist, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work.  However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.  In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you.  (Section 404.1527 explains how we consider opinions of your treating source and other medical opinions on the existence and severity of your symptoms, such as pain.)  We will then determine

22

> the extent to which your alleged functional limitations and
> restrictions due to pain or other symptoms can reasonably be
> accepted as consistent with the medical signs and laboratory findings
> and other evidence to decide how your symptoms affect your ability
> to work.

20 C.F.R. §404.1529(a). A claimant's symptoms will not be found to affect his ability to

work unless there is a medically determinable impairment that could reasonably be

expected to produce them. 20 C.F.R. § 404.1529(b). If so, the Commissioner then

evaluates the intensity and persistence of the claimant's pain and other symptoms and

determines the extent to which they limit his ability to work. 20 C.F.R. § 404.1529(c). In

making the determination, the Commissioner considers

> all of the available evidence, including your history, the signs and
> laboratory findings, and statements from you, your treating or nontreating
> source, or other persons about how your symptoms affect you. We also
> consider the medical opinions of your treating source and other medical
> opinions . . . .

*Id.*

In this evaluation of a claimant's symptoms, the Commissioner considers both

objective medical evidence and "any other information you may submit about your

symptoms." 20 C.F.R. § 404.1529(c)(2). The regulation further provides:

> Because symptoms, such as pain, are subjective and difficult to quantify,
> any symptom-related functional limitations and restrictions which you,
> your treating or nontreating source, or other persons report, which can
> reasonably be accepted as consistent with the objective medical evidence
> and other evidence, will be taken into account as explained in paragraph
> (c)(4) of this section in reaching a conclusion as to whether you are
> disabled. We will consider all of the evidence presented, including
> information about your prior work record, your statements about your

symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons. Section 404.1527 explains in detail how we consider and weigh treating source and other medical opinions about the nature and severity of your impairment(s) and any related symptoms, such as pain. Factors relevant to your symptoms, such as pain, which we will consider include:

(I) Your daily activities;

(ii) The location, duration, frequency, and intensity of your pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). When determining the extent to which a claimant's

symptoms limit his ability to work, the Commissioner considers whether the claimant's

statements about the symptoms is supported by or inconsistent with other evidence of

record:

In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other

24

evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4).

SSR 96-7p explains the two-step process established by the Commissioner's regulations

for evaluating a claimant's symptoms and their effects:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. The finding that an individual's impairment(s) could reasonably be expected to produce the individual's pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of the individual's symptoms. . . .

 Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the

25

adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements. In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

    1. The individual's daily activities;

    2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

    3. Factors that precipitate and aggravate the symptoms;

    4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

    5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

    6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

    7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

    <u>Case law interpreting the statute and regulations</u>. At the outset, it is important to keep in mind that symptoms are the claimant's "description of [his/her] physical or mental impairment." 20 C.F.R. § 404.1528(a). Inevitably, evaluating symptoms involves making credibility determinations about the reliability of the claimant's self-report of

26

his symptoms. *Smith ex rel E.S.D. v. Barnhart*, 157 Fed. Appx. 57, 62 (10th Cir. December. 5, 2005) (not published)("Credibility determinations concern statements about symptoms.")

"Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain." *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 247 (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996). That test was first set out in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). First, the Court must determine "whether there is objective medical evidence of an underlying medical condition." If so, the Court must then

> examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan*, 801 F.2d at 853.  Any "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers,* 486 F.3d at 247 (citing  *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir.1981)).  The ALJ is required to explain her credibility determination in her decision, which "'must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that

weight.'" *See id.* (quoting SSR 96-7p). Furthermore, the ALJ's decision must be support-

ed by substantial evidence. *Rogers,* 486 F.3d at 249.

Discussion of ALJ's Credibility Determination. In evaluating Hellyer's

credibility, the administrative law judge stated:

> Regarding overall credibility, the evidence fails to document that the
> claimant has demonstrated most of the signs typically associated with
> chronic, severe pain, such as muscle atrophy, spasm, rigidity, or tremor.
> The medical evidence demonstrates that the claimant has insulin
> dependent diabetes mellitus, chronic venous insufficiency, diabetic
> neuropathy, pain disorder with general medical condition, obstructive
> sleep apnea with restless leg syndrome, lower extremity edema,
> depression and a generalized anxiety disorder. As noted above, the
> additional medical evidence submitted since the prior decision fails to
> document any deterioration in the claimant's physical impairments or
> increased severity in the limitations they impose upon the claimant's
> ability to perform basic work functions.
> . . .
> Although the claimant alleges problems with regard to her lower
> extremities, in January 2008, David P. Lynch, D.O., the claimant's long
> time attending physician reported that the neuropathy with leg pain,
> present for 15 years, was controlled with medication and further reported
> that the claimant's leg wound was healing well. The claimant was noted to
> have full strength in both legs and no driving limitations (Exhibit 9F, pp.2-
> 4). Other than a remote history of a spider bite, testing has not revealed
> any specific cause for the claimant's lower extremity weakness or pain,
> although diabetic neuropathy has been suggested. A February 8, 2011
> bilateral venous duplex ultrasound found no evidence of DVT on either
> side (Exhibit 11F, p. 48 and 13F, p.40). February 11, 2011 lower arterial
> study found no edema and no evidence of significant of peripheral
> arterial disease of bilateral lower extremities (Exhibit 14F, pp.11-14). May
> 31, 2011 right lower extremity DVT Doppler ultrasound was negative for
> DVT to right lower extremity and no focal abnormalities were seen
> (Exhibit 13F, pp. 14-24). July 8, 2011 lower extremity Venous Duplex study
> found no evidence of DVT or SVT in vessels visualized in both lower
> extremities, but significant reflux noted on the superficial veins of both
> lower extremities (Exhibit 14F, p.10). July 15, 2011 Lexiscan Sestamibi
> Myocardial Perfusion Imaging Study was normal with no evidence of

ischemia; left ventricular gated ejection fraction was normal to 69 percent with normal wall motion and wall thickening; and ECG portion of stress test was negative for ischemia (Exhibit 14F, p.6) The claimant's pain complaints could not be explained by laboratory tests and she was referred to a pain specialist, Ron P. Linehan, M.D. (Exhibit 17F, pp.4-5). Dr. Linehan reported that although the etiology of the claimant's pain was unclear, he suspect[ed] a probable component of diabetic neuropathy, nerve root impingement secondary to lumbar disc disease. Lumbar spine x-rays demonstrated only mild spondylosis multiple levels, mild to moderate degenerative disease and spondylosis and facet arthropathy at L5-S1 (Exhibit 15F, p.50). Dr. Linehan reported no improvement with lumbar epidural steroid injections (Exhibit 21F).

(R. 54-55.)

Here, the administrative law judge properly evaluated plaintiff's credibility when considering the objective medical evidence, treatment measures, and her activities of daily living. The administrative law judge also noted inconsistent statements regarding her limitations made by plaintiff:

In addition to the general lack of objective evidence to support her subjective complaints, there are other considerations that weight against the claimant's overall credibility. For example:

In October 2010, the claimant reported non-healing wound on her left leg causing pain since only June 2010. She also reported a 15-year history of diabetes, but was not taking any medication for control. She also reported that sitting was unaffected (Exhibit 2F).

In February 2011, during a diabetes consultation, the claimant reported walking dogs two to three times daily, one-half mile walk for exercise (Exhibit 11F, p. 58).

In February 2011 the claimant reported feeling "bad" after her glucose dropped from 300's to 200's and ate a "cookie." The claimant reportedly was not keeping logs and had irregular meal times (Exhibit 15F, p. 26).

>    Dr. Tencza reported that a significant portion of the claimant's
>    breathing complaints and fatigue might be related to untreated
>    sleep disordered breathing (Exhibit 19F) and the claimant was
>    referred for sleep studies. However, although diagnosed with OSA,
>    the claimant left early, twice, against medical advice (AMA) during
>    the sleep studies (Exhibit 23F).
>
>    The claimant has alleged difficulty using her hands due to
>    numbness and weakness, but when seen by an endocrinologist in
>    January 2012, she denied any symptoms related to her hands
>    (Exhibit 24F).

(R. 56-57.) As a result, the credibility assessment of the administrative law judge is

supported by substantial evidence in the record.

　　　　Failure to Obtain a Medical Expert. The primary function of a medical expert is

to explain medical terms and the findings in medical reports in more complex cases in

terms that the administrative law judge, a who is not a medical professional, may

understand. *See, Richardson v. Perales,* 402 U.S. 389, 408 (1972).  The Commissioner's

regulations provide that an administrative law judge "may also ask for and consider

opinions from medical experts on the nature and severity of [the claimant's]

impairment(s) and on whether [the] impairment(s) equals the requirements of any

impairment listed in appendix 1 to this sub-part."  20 C.F.R. § 404,1527(f)(2)(iii).  The

Commissioner's operations manual indicates that it is within the administrative law

judge's discretion whether to seek the assistance of a medical expert.  HALLEX I-2-5-32

(September 28, 2005).  "The primary reason an ALJ may obtain ME opinion is to gain

information which will help him or her evaluate the medical evidence in a case, and

determine whether the claimant is disabled or blind."  *Id.*  The operations manual

indicates that an administrative law judge "may need to obtain an ME's opinion" in the following circumstances:

- the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s);
- the ALJ is determining the usual dosage and effect of drugs and other forms of therapy;
- the ALJ is assessing a claimant's failure to follow prescribed treatment;
- the ALJ is determining the degree of severity of a claimant's physical or mental impairment;
- the ALJ has reasonable doubt about the adequacy of the medical record in a case, and believes that an ME may be able to suggest additional relevant evidence;
- the medical evidence is conflicting or confusing, and the ALJ believes an ME may be able to clarify and explain the evidence or help resolve a conflict;
- the significance of clinical or laboratory findings in the record is not clear, and the ALJ believes an ME may be able to explain the findings and assist the ALJ in assessing their clinical significance;
- the ALJ is determining the claimant's residual functional capacity, *e.g.*, the ALJ may ask the ME to explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record;
- the ALJ has a question about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time, *e.g.*, the ALJ may ask the ME to explain the nature of an impairment and identify any medically contraindicated activities; or
- the ALJ desires expert medical opinion regarding the onset of an impairment.

HALLEX I-2-5-34 (September 28, 2005).  An administrative law judge's determination of whether a medical expert is necessary is inherently a discretionary decision.  *Nebra A. Simpson v. Commissioner of Social Security,* 2009 WL 2628355 (6th Cir. August 27, 2009)(unreported) at *8. An administrative law judge abuses her discretion only when

the testimony of a medical expert is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations.  *See* 20 C.F.R. § 416.1444." *Haywood v. Sullivan,* 888 F.2d 1463, 1467-68 (5th Cir. 1989).

Here the administrative law judge did not abuse his discretion.  His decision included a thorough recitation of the evidence and provided a thorough, well-documented findings supporting the conclusion.

From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v.*

*Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R.  Abel          
United States Magistrate Judge